## ST. LOUIS & S. F. R. CO. v. REYNOLDS *et al.*

### No. 1144.   Opinion Filed July 12, 1910.

(110 Pac. 668.)

1. **RAILROADS—Orders of Corporation Commission—Train Service —Adequate Facilities—Interstate Commerce.** Where a railroad company has provided adequate and reasonable facilities for the accommodation of traffic to and from a certain place, an order of the Corporation Commission, requiring it to stop another train engaged in interstate commerce at said point is unreasonable.

2. **RAILROADS — "Adequate Facilities" — Definition.** The term "adequate facilities" is not capable of exact definition, being a relative term, and calls for such facilities as may be fairly demanded, regard being had to the size of such station or place, the extent of the demand of transportation, its relative location to other places, the cost of furnishing additional accommodations asked for, and all other facts which would have a bearing upon the question of convenience and cost (M., K. & T. Ry. Co. v. Town of Norfolk et al., 25 Okla. 325, 107 Pac. 172.)

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

From an order of the Corporation Commission, the St. Louis & San Francisco Railroad Company brings error. Reversed.

*W. F. Evans, E. T. Miller,* and *R. A. Kleinschmidt,* for plaintiff in error.

*Chas. West,* Atty Gen., and *Geo. A. Henshaw,* Asst. Atty. Gen., for defendants in error.

TURNER, J. The order appealed from runs in the alternative. By it appellant is required by the Corporation Commission to stop on flag its interstate passenger trains Nos. 5 and 6 at Cameron—that is, No. 5 going south about 10 o'clock a. m. and No. 6 going north about 5 p. m.—or restore the schedule of interstate trains Nos. 11 and 12, which, until a short time theretofore, by order of the commission stopped at Cameron going south about 8 o'clock a. m. and returning stopped again at 4:25 p. m. Only two

witnesses testified at the hearing—one a resident of Cameron, the other appellant's division superintendent.

The facts found by the commission upon which this order is based are that "the evidence shows, and the commission finds therefrom, that three-fourths of the farmers of Le Flore county live north of Poteau, and are without the proper train service to meet their reasonable necessities in going to and from the county seat; that the train ordered restored in the alternative had been installed by its order in September, 1908, in response to a petition filed by the citizens of Stanley, a station on appellant's road in an adjoining county, and had run for about 11 months, but in bad faith a few weeks prior to the instant hearing had been changed so as to run south through Cameron at about 4 o'clock p. m. and north in the morning; that the citizens of Cameron and vicinity have not the proper train service to meet their reasonable requirements, and, but for the fact that sufficient local passenger trains are now run over this line to properly care for the business, the commission would not hesitate to make an order unqualifiedly requiring defendant to stop trains Nos. 5 and 6 on flag at the town of Cameron"—and then, as stated, ordered appellant to elect which train it would run. · In opposition to this order it was shown that trains Nos. 5 and 6 are fast limited trains from St. St. Louis to Texas and the Southwest, and generally carry mail and express, "and it is pretty hard to make the time if any additional stops are forced"; that all of appellant's competitive business is handled by these trains in competition with three other roads; that there were already two passenger trains each way every day which made regular stops at Cameron, one passenger train each way every day that stops there on a flag, and one freight train each way every day that stops there and carries passengers to Poteau, the county seat, seven miles south. In short it is shown by the evidence that eight trains each day stop at Cameron to receive and discharge passengers. The schedule of none of these trains is further shown except that of the local freight which leaves Cameron at 9:10 a. m., arrives at Poteau 9:40 a. m., and, returning, leaves Poteau at 12:18 p. m., and arrives at Cameron 12:35

p. m. It is insisted that this train enables passengers to leave Cameron at a convenient time in the morning, spend 2 hours and 38 minutes in Poteau, and return at 12:35 the same day; or, if a longer time at Poteau is desired, passengers can remain and return on the midnight train, or on the passenger train early next morning.

That it is the duty of the company to furnish adequate facilities for the accommodation of local passenger traffic between Cameron and Poteau is conceded, but it is insisted by appellant the evidence discloses that it has lived up to the full measure of this duty, and for that reason the order is unreasonable. As to what is meant by "adequate facilities," this court in *M., K. & T. Ry. Co. v. Town of Witcher,* 25 Okla. 586, 106 Pac. 852, in the syllabus said:

"(2) The term 'adequate facilities' is not capable of exact definition, being a relative term, and calls for such facilities as may be fairly demanded, regard being had to the size of such station or place, the extent of the demand of transportation, its relative location to other places, the cost of furnishing additional accommodations asked for, and all other facts which would have a bearing upon the question of convenience and cost (*M., K. & T. Ry. Co. v. Town of Norfolk et al.,* 25 Okla. 325, 107 Pac. 172)."

Tested by this rule, does the evidence overcome the *prima facie* presumption that the order is reasonable; that is, the presumption that the additional facilities ordered were fairly demanded by the necessities of the situation? While the order reads: "The evidence shows, and the commission finds therefrom, that three-fourths of the farmers of Le Flore county live north of Poteau and are without the proper train service to meet their reasonable necessities in going to and from the county seat"—there is no evidence tending to prove what fractional part of the farmers of that county live north of Poteau or that they did or would naturally travel on appellant's line to the county seat or take passage thereon at Cameron, or sought the order. Neither does the evidence tend to prove the extent of the demand for this additional facility except that certain petitioners, whose residences are undisclosed, petitioned therefor. Neither does it tend to prove the population of either

Cameron or Poteau, the extent of the passengr traffic to or from the former or between those points, or any such data by which either the commission or this court can determine whether the exigencies thereof fairly required the extra facilities sought to be provided by the order. On the other hand, we take judicial notice that it is but 7.3 miles from Cameron to Jenson, where appellant's line quits the state, and from the boundaries of the county, that it would be impossible for any considerable per cent., much less three-fourths of the farmers of the county, to naturally embark at Cameron for Poteau. Besides, it appears from the order itself that the local situation was fairly served. The order recites: " * * * But for the fact that sufficient local passenger trains are now run over this line to properly care for the business, etc. * * * " In view of such finding, which, is supported by the evidence, and the fact that complaint is made only of the inadequacy of the local passenger service and none of the through passenger service, we do not see how the order can stand. The order is therefore an attempt to stop interstate trains at a station where the evidence discloses and the order specifically finds as a fact that sufficient local passenger trains now run over appellant's line to properly care for the business. Such order is unreasonable, and has been so expressly held in *M., K. & T. Ry. Co. v. Town of Norfolk, supra,* where the court in the syllabus said:

"Where a railroad company has provided adequate and reasonable facilities for the accommodation of traffic to and from a certain place, an order of the Corporation Commission, requiring it to stop another train engaged in interstate commerce at said point, is unreasonable."

The order of the commission is therefore reversed.

DUNN, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., disqualified and not participating.